DEMAREST et al. v. FRIEDMAN.

(Supreme Court, Appellate Division, First Department. June 7, 1901.)

VENDOR AND PURCHASER—MARKETABLE TITLE—DEATH OF HEIR—EVIDENCE.

D., who owned the land in controversy, died in 1836, leaving four heirs, E., M., H., and A. H. died in 1878, single and without issue; and in 1852 A. was divorced from his wife, by whom he had no issue, and in 1860, for the purpose of restoring his health, embarked on a ship which was going on a whaling voyage of uncertain duration. In 1865 M. obtained possession of a letter addressed to her father, who was dead, by the vice consul of the United States at Callao, Peru, containing information of the death of one A., and a statement that he was discharged from the whaling ship at Arica, and that his pocketbook contained an order for his share in the voyage of such vessel. Since 1864 none of A.'s relatives had ever heard from him. *Held*, that the evidence was sufficient to show that A. died unmarried and without issue, and hence a deed executed by M. and E. conveyed a marketable title.

Action by Margaret Demarest and another against Robert Friedman. Controversy submitted on an agreed statement of facts, in accordance with Code Civ. Proc. § 1279.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Ernest Hall, for plaintiffs.
H. Seymour Eisman, for defendant.

PATTERSON, J. This case comes before us upon a submission of a controversy upon an agreed state of facts, pursuant to the provisions of section 1279 of the Code of Civil Procedure. The defendant's assignors entered into a contract in and by which they agreed to purchase from the plaintiffs certain premises, known as No. 107 Thompson street, in the borough of Manhattan, in the city of New York. Such assignors paid at the time of the signing of the contract the sum of $500 on account of the purchase price. At the time named in the contract the plaintiffs tendered to the defendant, as assignee of the purchasers, a deed purporting to convey to him in fee simple the premises free and clear of all incumbrances. The defendant rejected the title, and demanded back the amount of the deposit, together with a certain sum as expenses incurred by him in searching the title to the said premises. The ground of the rejection, apparently, is that there was an outstanding interest or estate in a person which would not pass by the deed tendered by the plaintiffs, which was executed only by themselves. The submission shows that the premises in question belonged in 1824 to one Albert A. Demarest, who died on the 21st of October, 1836, leaving, him surviving, his widow and four children, Mary Ann Elizabeth, Margaret, Harriet, and Albert. By his last will and testament he gave to his widow for life or during widowhood a one-third interest in all his real and personal property in lieu of dower, and he gave all the remainder to his three daughters and his son, Albert, in equal shares, to be divided when the youngest child arrived at age, if at that time his widow should be deceased or remarried. The widow died in August, 1864, never having remarried.

The daughter Harriet died September 6, 1878, unmarried and intestate. It appears by a petition for letters of administration upon her estate that she left no child or children, or descendant of any deceased child or children, and no brother or sister, or descendant of any deceased brother or sister, except Mary Ann Elizabeth and Margaret, the plaintiffs herein. The objection to the title is substantially that there is an outstanding interest in Albert Demarest, not accounted for, and which could not be conveyed. He was born on the 31st of October, 1830; was married in 1849, but procured a decree of divorce from his wife on November 13, 1852, since which time the wife has never been heard from. There was no issue of that marriage, and neither the plaintiffs nor any of the family have ever heard of any issue of such marriage. From 1851 to 1860 Albert Demarest lived with his sister Mary Ann Elizabeth, who saw him daily, and knew of his association and acquaintances and his daily manner of life; and up to the last-mentioned year he remained unmarried and without issue. In 1860 he embarked on the ship the Charles and Edward, from New Bedford, Mass., bound on a whaling voyage of uncertain duration. From time to time his sisters received letters from him. In January, 1865, his sister the plaintiff Mary A. E. Stewart received information of an official character from W. Seabury Coffin, vice consul of the United States at Callao, Peru, of the death of Albert Demarest. That the person whose death was so announced was Albert Demarest, the brother of these plaintiffs, we have no doubt. The letter of the vice consul was under the official seal of the consulate. It was addressed to Albert A. Demarest, who was the father of Albert Demarest, but who died in 1836. That letter came into the possession of one of the plaintiffs, and was opened by her. It contains a statement of the circumstances attending the death of Albert Demarest, and thoroughly identifies him as the person who sailed on the whaling ship Charles and Edward. It communicates information to Albert A. Demarest of the death of his son, who was discharged at Arica from the whaling ship Charles and Edward. In the agreed state of facts it is stated that Albert Demarest went upon this whaling voyage in poor health, under the direction of his physician. The letter of the vice consul states that A. A. Demarest's son was discharged from his ship at Arica, Peru, and was on his way to the states via Panama, sick with consumption. On the arrival of the steamer at Callao the vice consul went aboard the steamer and found Demarest in a very low state. An effort was made to bring the sick man ashore. He was dressed and brought on deck. When about to step upon the ladder to go into a boat, he fell back, and died without a struggle. His effects consisted only of clothing of no value. His pocketbook contained an order on the owners for his share of the voyage. There were also some photographs and letters and a ring, which were sent by private hand. His body was buried with Christian rites, and his grave was numbered at the British consulate. The papers that were inclosed in the letter were the discharge of Albert Demarest from the ship Charles and Edward, signed by the United States consul at Arica, and a statement

of the account of Albert Demarest with the ship and its owners. Nothing whatever has been heard of Albert Demarest by any of his relatives since 1864. The department of state in the United States has certified that in 1864, at the date of the vice consul's letter above referred to, W. Seabury Coffin, who signed that letter, was vice consul of the United States at Callao, and in charge of the office there. On these facts, we have no doubt whatever that Albert Demarest, the son of Albert A. Demarest, and the brother of these plaintiffs, died in December, 1864. The proof upon that subject is convincing, and authorizes us to conclude that he died unmarried and without issue. Each case of this character must stand upon its own facts. We are not indulging here in a presumption of death, but upon what we consider to be ample proof of the fact of death. That event occurred over 37 years ago. No one has ever come forward to assert a claim to the interest which he derived in the real estate under his father's will. The mere possibility that while he was on this whaling voyage in the Pacific, being attached to the ship from 1860 to November, 1864, when he was discharged at Arica, in South America, he might have married at some port and might have had issue, is so remote and unreasonable a conjecture that it should not be allowed as an objection to title to real estate. If the existence of an alleged fact is a possibility merely, or a supposed outstanding right depends upon a very improbable and remote contingency, the court has the discretion to compel a purchaser to complete his purchase. Ferry v. Sampson, 112 N. Y. 418, 20 N. E. 387. This case is free from reasonable doubt, and we are of the opinion that the discretion, if it be a matter of discretion, should be exercised to compel the purchaser to take the title.

Judgment is directed on the submission for the plaintiffs, without costs. All concur.